U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT 2 4 2019

CLERK U.S. DISTRICT COURT
By: _____
                  Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:19-MJ- **869** |
| CHARITY CANTU (01) | |

## CRIMINAL COMPLAINT

I, Sergeant Thomas Hruskocy, the undersigned Complainant, being duly sworn, set forth facts and reasonable inferences from those facts, establishing that there is probable cause to believe that:

During the month of July of 2019, and continuing through on or about October 12, 2019, in the Fort Worth Division of the Northern District of Texas and elsewhere, the defendant, **Charity Cantu** knowingly in and affecting interstate commerce, recruited, enticed, harbored, transported, provided, obtained or maintained by any means, and benefit financially and by receiving anything of value from participation in a venture which recruited, enticed, harbored, transported, provided, obtained and maintained the following individual Jane Doe 1 (JD1), a child under the age of 18 and knowing and in reckless disregard of the fact that JD1 was under the age of 18 caused JD1 to engage in commercial sex acts, in violation of 18 U.S.C. § 1591(a)(1) and (a)(2) and (b)(1).

## PROBABLE CAUSE

I am a Sergeant Investigator with the Texas Attorney General's Office (Texas OAG) – assigned to the Human Trafficking Unit, Austin, Texas. This complaint is based on the following facts gathered through my investigation conducted in coordination with Homeland Security Investigations (HSI) Dallas and the Fort Worth (Texas) Police Department's Major Case Unit. I state the following is true and correct to the best of my knowledge and belief:

**Complaint - Page 1**

1. On October 12, 2019, Sgt. Peterson and I, of the Office of the Texas Attorney General's Human Trafficking Unit, were participating in a multi-agency human trafficking operation. This operation was conducted at the Fairfield Inn, 6851 West Freeway, Fort Worth, Texas.

2. On October 12, 2019, an advertisement offering sex for a fee was located on an internet escort website, Escort Alligator.com. The advertisement dated October 12, 2019, with a time stamp of 05:52 p.m. was titled "No Condom Sex". Further depicted on the advertisement were photographs of two different black females dressed in lingerie. On one of the pictures of a black female there was text that stated "ASK ABOUT MY TWO GIRL SHOW". The ad also contained a contact number listed as 940-514-6475.

3. One of the other law enforcement entities involved in the operation initiated a text conversation with the 940-514-6475 number. During the course of the text conversation, it was asked if there was an "outcall" available for a "two girl special." "Outcall" is a slang term asking for a person engaged in prostitution to come to your location to engage in sex for US Currency. Through my training and experience, I know that "a two girl special" is when two people engaged in prostitution are engaging in sexual conduct with the buyer for a fee as part of the same call. The recipient of the text asked how much money the buyer wanted to spend. The reply to the text was $160 unless a "bareback" service would be provided in which case an extra $100 would be available. Through my training and experience, I know "bareback" is a common term for

sex without a condom. The recipient of the text advised that for two girls to come to the location the cost would be $300. It was further detailed that the recipient of the text was the subject that would engage in the "bareback" portion of the sex. It was then agreed upon that the two females would come to 6851 West Freeway, Ft Worth, Texas, 76116 (Fairfield Inn) to engage in sexual intercourse for an hour for a fee of $300.

4. At approximately 6:54 p.m., the recipient advised that she and the second girl were 30 minutes away from the location. There was a text sent at 7:16 p.m. telling the recipient that the room to come to was 126. At approximately 7:25 p.m. the recipient texted asking law enforcement to open the door to Room 126. When I was advised that the female subjects were at the door, I then exited the room next door to detain the subjects for a prostitution investigation. There were two black females standing at the door of Room 126. I was wearing a vest that was clearly marked "POLICE". I, as well as other investigators assigned to the outreach operation, attempted to engage the two females offering them the opportunity for services to assist in getting out of prostitution. One of the black females saw the vest that displayed police markings and ran. While she was running, she yelled to the other black female to run. Both subjects ran down the hall from police. One of the black females was detained inside of the hotel and the other black female was detained in the parking lot. Both females were brought back to the contact rooms for interviews.

5. The black female that was detained inside of the hotel was identified as a 17-year-old child, JD1. During the recorded interview that I conducted, the child said that

she met the other female that was identified as **Charity Cantu** several months ago in Denton, Texas. JD1 is from Illinois and came to Texas with a friend or family member and with her mother's knowledge. She is not currently listed as a runaway. She advised that she knows what prostitution is and that she engages in this activity because she is trying to make money. She stated that she and **Cantu** are engaged in a personal relationship and that they both engage in prostitution and that they split the money 50-50 between them. JD1 claimed that she posted the internet advertisements. JD1 stated that on her phone I would find conversations between JD1 and **Cantu** about money and that in addition I would find text conversations with sex buyers.

6.   **Cantu** was then interviewed by me and Officer Becky Aranda of the Farmers Branch Police Department. The interview was recorded. Initially **Cantu** was treated as a potential victim in the same manner that JD1 was treated. However, during the interview she disclosed that she caused JD1, a child, to engage in prostitution and had been for a period of three months. The second portion of the interview was then conducted by Sgt. T. Peterson, who is employed by the Office of the Texas Attorney General's Human Trafficking Unit and I. **Cantu** was read her *Miranda* Warnings on the recording. **Cantu** acknowledged the *Miranda* warning and signed a written copy of the warning stating that she would speak with investigators. During the interview, **Cantu** stated that she posted the advertisements for sex on the internet using her cell phone. **Cantu** confessed that she and JD1 have been engaging in prostitution for the last three months together. **Cantu** confessed that all of the money that was made by the child was

**Complaint - Page 4**

given to **Cantu** to deposit into **Cantu's** bank account. **Cantu** explained that she and JD1 were in a sexual relationship and called JD1 "her girl". **Cantu** explained that she provided the child with everything that she needed, housing, clothing, money for hygiene items, food, having her hair and make-up done but did not give the child any of the money that the child earned through prostitution. **Cantu** told investigators that she uses her personal phone number on the advertisements for buyers to contact her to engage in sex for money and acknowledged that the 940-514-6475 was her number. **Cantu** confessed to being a "mentor" to JD1 and teaching her how to engage in prostitution. **Cantu** stated that she would make $5000-$6000 dollars a month from the sex work that she and JD1 engaged in and that she used that money to purchase bitcoin.

7. After the interviews, the phones of both JD1 and **Cantu** were seized and secured as necessary to the continuing trafficking investigation. I procured search warrants for the phones based on the evidence of trafficking that both JD1 and **Cantu** disclosed during the interviews. I drafted and submitted cell phone search warrants to Tarrant County Senior District Court Judge Everett Young. Judge Young signed the search warrants for both cell phones.

## CONCLUSION

Based on the foregoing facts and circumstances, I respectfully submit that there is probable cause to believe that beginning on or about July 2019, and continuing through on or about October 12, 2019, in the Fort Worth Division of the Northern District of Texas and elsewhere, the defendant, **Charity Cantu** knowingly in and affecting interstate

commerce, recruited, enticed, harbored, transported, provided, obtained or maintained by any means, and benefit financially and by receiving anything of value from participation in a venture which recruited, enticed, harbored, transported, provided, obtained and maintained the following individual Jane Doe 1 (JD1), a child under the age of 18 and knowing and in reckless disregard of the fact that JD1 was under the age of 18 caused JD1 to engage in commercial sex acts, in violation of 18 U.S.C. § 1591(a)(1) and (a)(2) and (b)(1).

_____
Thomas Hruskocy
Sergeant Investigator
Texas Office of the Attorney General

Subscribed and sworn before me this 24th day of October 2019, at 1:37 a.m./p.m., in Fort Worth, Texas.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

Complaint - Page 6